Filed 9/24/15  P. v. Garza CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE GARZA,<br><br>Defendant and Appellant. | F068580<br><br>(Super. Ct. Nos. MCR047120, MCF030753A, MCR046462)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Madera County.  Joseph A. Soldani, Judge.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Kane, Acting P. J., Franson, J. and Smith, J.

# INTRODUCTION

Following a jury trial, appellant Jose Garza was convicted of felony unlawful possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a), count 1), and misdemeanor unlawful possession of paraphernalia used for smoking a controlled substance (Health & Saf. Code, § 11364.1, count 2). Appellant was sentenced to county jail for an aggregate term of four years and four months, with credit for time served.[1] In addition, he was sentenced to 30 days in custody with 30 days credit for time served for count 2.

On appeal, appellant contends there is insufficient evidence to support the jury's finding that he possessed a usable quantity of a controlled substance, methamphetamine. We disagree and affirm the judgment.

# FACTS

## *Prosecution Case-in-Chief*

On September 3, 2013, at approximately 2:20 a.m., Officer William Spears from the Madera Police Department observed appellant riding his bicycle without lights in violation of the Vehicle Code. Based on his observation, Office Spears initiated a traffic stop.

As appellant got off his bicycle, Officer Spears noticed a bulge in appellant's pocket. He asked appellant what the bulge was and appellant responded that it was a knife. Officer Spears asked appellant if he could search him and appellant consented. Although the bulge was not a knife, Officer Spears continued searching appellant based on his response.

In the upper chest pocket of appellant's leather vest, Officer Spears discovered a glass pipe wrapped inside of a sock, there was an off-white cake-like substance inside the

---

[1] Appellant was sentenced in three cases. He was charged with unlawful possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a)) in case Nos. MCR030753A, MCR046462 and MCR047120.

bulb of the pipe. He also observed that the tube of the glass pipe was coated with a white powder granule. Officer Spears testified the pipe was used to smoke methamphetamine. Appellant admitted the substance inside the pipe was crystal methamphetamine, he also told Officer Spears the pipe was his and he used it.

After Officer Spears booked the pipe into evidence, he removed a chunk of methamphetamine from the inside of the pipe. He testified that in his opinion, the chunk was a usable quantity. Officer Spears explained that a narcotics user could apply heat to the chunk and ingest its vapors. He also testified that in his experience, it was not unusual for a user to put a controlled substance into a pipe, use it, and leave the remainder in the pipe for use at a later time.

Steve Patton, assistant laboratory director for the California Department of Justice, performed a chemical analysis of the chunk recovered by Officer Spears. The chunk weighed .068 grams and testified positive as methamphetamine. Patton testified that although the substance was not in its typical powdery street form and it appeared to have been heated and charred, it was "definitely a usable quantity" for smoking. Patton explained the substance was large enough that it could be manipulated in a typical fashion, a user could pick it up, put into a pipe, heat it, and smoke it. He also stated that while anything less than .02 grams is questionable as a usable amount, the chunk recovered by Officer Spears was over three times that quantity.

### Defense Case

Appellant testified in his own defense. He testified that on September 3rd, he was on the way to visit his girlfriend and her son when Officer Spears stopped him. Appellant claimed that although he told Officer Spears the pipe belonged to him, it actually belonged to one of his brothers or his brother's friends, who had borrowed appellant's vest. Appellant forgot to throw the pipe away. He also testified that although he smoked methamphetamine on prior occasions, he had no intention of smoking the methamphetamine removed from the pipe.

3

*Rebuttal*

Officer Spears testified that appellant related to him he had been in possession of the vest for the last couple of weeks but forgot the pipe was in his vest.

## DISCUSSION

Appellant contends the evidence was insufficient to support the jury's finding that he was in possession of a controlled substance because the quantity of methamphetamine recovered was not an amount usable for consumption. We disagree.

The test of sufficiency of the evidence is whether, reviewing the whole record in the light most favorable to the judgment below, substantial evidence is disclosed such that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1067; *People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Xiong* (2013) 215 Cal.App.4th 1259, 1268.) Substantial evidence is evidence which is "reasonable, credible, and of solid value." (*People v. Johnson*, *supra*, at p. 578.) In reviewing a record for substantial evidence, an appellate court must not reweigh the evidence (*People v. Culver* (1973) 10 Cal.3d 542, 548), reappraise the credibility of the witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact. (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 367.)

An appellate court can only reject evidence accepted by the trier of fact when the evidence is inherently improbable and impossible of belief. (*People v. Maxwell* (1979) 94 Cal.App.3d 562, 577.) Our sole function is to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Marshall* (1997) 15 Cal.4th 1, 34.)

Health and Safety Code section 11377, subdivision (a) provides, in relevant part, "every person who possesses any controlled substance ... shall be punished by imprisonment in a county jail ...." To sustain a conviction for possession of

4

methamphetamine under Health and Safety Code section 11377, the People must prove the following four elements: "(1) defendant exercised control over or the right to control an amount of methamphetamine; (2) defendant knew of its presence; (3) defendant knew of its nature as a controlled substance; and (4) *the substance was in an amount usable for consumption*. [Citations.]" (*People v. Tripp* (2007) 151 Cal.App.4th 951, 956, original italics omitted, italics added.)

In *People v. Leal* (1966) 64 Cal.2d 504, 512 (*Leal*), our Supreme Court held "the possession of a minute crystalline residue of narcotic useless for either sale or consumption, ... does not constitute sufficient evidence in itself to sustain a conviction." In *Leal*, an officer discovered one-half grain of heroin residue (approximately 32 milligrams or .032 grams) encrusted on a small spoon in the defendant's home. (*Id*. at p. 505.) The *Leal* court remitted the case back to the trial court for further factual determination of whether the defendant possessed more than a trace amount of narcotics residue, and whether the residue "was usable for sale or consumption." (*Id*. at p. 512.)

In *People v. Rubacalba* (1993) 6 Cal.4th 62, 65 (*Rubacalba*) the Supreme Court clarified what a usable amount of narcotics is pursuant to a prosecution for the possession of a controlled substance. The *Rubacalba* court held that neither the quantity of a narcotic nor its effect need be proven to establish the existence of a usable quantity, reasoning, "only when the substance possessed simply cannot be used, such as when it is a blackened residue or a useless trace," will a usable quantity be found not to exist. (*Id*. at p. 66.) In its decision, the *Rubacalba* court cited with approval *People v. Karmelich* (1979) 92 Cal.App.3d 452, a decision from the Second Appellate District that limited *Leal* to cases "where only a residue unusable for any purpose, is found;" explicitly finding "it does not extend to a case ... where the presence of ... [a narcotic] itself, not a mere blackened residue on a spoon, was discovered." (*Karmelich, supra,* at p. 456.)

We find the prosecution proved by substantial evidence that methamphetamine, rather than blackened residue, was removed from the pipe in appellant's possession.

5

Here, unlike *Leal*, the prosecution put on strong evidence that appellant was in possession of more than trace amounts of narcotics residue. Officer Spears and Patton both testified the methamphetamine chunk recovered from appellant's pipe was a usable quantity.

Respondent contends Officer Spear's testimony was unreliable as it was based on his determination the chunk weighed .1 gram; whereas, the Department of Justice determined the net weight was actually .068 grams. As previously set forth, it is not the quantity of narcotics but the usability of the narcotics that will determine whether a usable quantity will be found to exist. (*People v. Rubacalba*, *supra*, 6 Cal.4th 62, 66 ["the amount of cocaine needed to produce a narcotic effect and the purity of the substance need not be proven in order to establish a usable quantity"].)

Officer Spears testified that based on his 22 years of experience, in addition to his examination of the pipe, from which he was able to remove a solid chunk of the substance, he determined there was a usable amount of methamphetamine inside appellant's pipe. The quantity of narcotics has no bearing upon whether appellant was in possession of a usable quantity; therefore, the slight difference in weight assigned to the methamphetamine chunk is inconsequential.[2]

Respondent also contends expert testimony from Assistant Laboratory Director Patton may not be relied upon because Patton did not offer a scientific basis for his opinion. Patton testified that the chunk of methamphetamine recovered, which weighed .068 grams, was a usable quantity. He explained that although the chunk had some charring, and was not in the best form for snorting or injecting, it was large enough to be picked up, reheated, and ingested by smoking. He opined that anything below .02 grams was questionable concerning whether it could be considered a usable amount, but the chunk removed from appellant's pipe was over three times that amount.

---

[2] For this same reason, appellant's testimony that no narcotics user would waste his or her time trying to smoke the quantity of methamphetamine recovered is not credited.

Patton based his opinion on 26 years of training and field experience. His credentials, qualifying him as an expert witness, were not challenged by defense counsel at trial. Patton testified that he received training in physically manipulating narcotics into devices, such as pipes, cigarettes, and syringes, for user consumption. Although the materials he worked with were intended to simulate heroin, rather than methamphetamine, this distinction is inconsequential considering Patton's extensive narcotics training, in addition to his testimony that given the size and weight of the chunk removed from appellant's pipe, it could easily be put into a pipe and smoked. Accordingly, we find Patton provided a sufficient basis for his expert opinion.

Patton's expert opinion corroborated the testimony of Officer Spears. Both testified that based on their experience and training in narcotics, the chunk of methamphetamine was large enough to be physically picked up, reheated, and smoked by a narcotics user. The only reasonable inference that can be drawn from this evidence is that more than blackened residue or useless traces of narcotics were recovered from appellant's pipe. We find there was substantial evidence supporting the jury's finding that appellant was in possession of a usable quantity of methamphetamine.

## DISPOSITION

The judgment is affirmed.